**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | |
|---|---|
| Mitchell David Holbach, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| vs. ) | |
| ) | |
| Leann Bertsch, Don Redmann, ) | Case No.  1:09-cv-014 |
| Bill Harris, and Tyler Falk, ) | |
| ) | |
| Defendants. ) | |

## I.     INTRODUCTION

Plaintiff Holbach is an inmate of the North Dakota Department of Corrections and Rehabilitation (DOCR) at its James River Correctional Center (JRCC) in Jamestown, North Dakota. Proceeding *pro se*, Holbach initiated this action on April 6, 2009, by lodging a complaint alleging, among other things, violations of 42 U.S.C. § 1983.

On April 7, 2009, the court issued its screening order pursuant to 28 U.S.C. § 1915A and ordered the complaint to be served.  Defendants Bertsch, Redmann, and Falk have now filed a motion for summary judgment (Doc. No. 25) and defendant Harris has filed a motion to dismiss (Doc. No. 29).[1]  Judge Hovland has referred the motions to the undersigned for preliminary consideration.

Holbach makes the following claims, which are numbered  for ease of reference:

---

[1] It is not clear what the relationship is between defendant Harris and the remaining defendants.  The court suspects, however, that defendant Harris is either an independent contractor or works for a contractor providing services to the DOCR.  Defendants Bertsch, Redmann, and Falk are all DOCR employees.

1

1.  The requirement of the DOCR's telephone policy that persons on a prisoner's call list must complete and return an application in order for the prisoner to have telephone contact with them violates Holbach's First Amendment and parental rights.

2.  The imposition of blocks on two telephone numbers on Holbach's call list that he claims he uses to communicate with his minor son violated his First Amendment and parental rights.

3.  Defendants' negligence in the implementation of the DOCR's telephone policy has prevented Holbach from being having phone contact with his minor son and sister.

4.  Defendants have failed to comply with Holbach's court-ordered visitation rights by imposing blocks on the numbers that he claims he used to communicate with his minor son.

5.  Defendant Falk negligently handled items of Holbach's outgoing mail and also was responsible for the destruction of mail receipts that Holbach claims he needed as evidence in his civil domestic relations action.

6.  Defendant Falk improperly disclosed to a third party confidential information about Holbach.

(Docket No. 7).[2]

---

[2] Holbach has continued to file material with the court long after the time period for making responses to the motions expired. In his most recent filing of today, Holbach complains that telephone companies are refusing to do business with the DOCR and this is preventing him from making collect calls to his father. He also complains about the "illicit profits" being made by the private company handling the DOCR's phone service. Not only are these matters untimely, they are not fairly encompassed with the scope of the complaint. Also, from what Holbach has filed, the federal law issues are not evident and, to the extent he may have valid claims, they might be better matters for the state courts, which can consider both state law claims and federal constitutional claims pursuant to 42 U.S.C. § 1983.

Holbach seeks only injunctive relief. With respect to Claims 1 through 4, he requests that the court: (1) direct the DOCR to remove the phone blocks on the two numbers he claims he was using to telephone his minor child; (2) order the DOCR to alter its telephone policy to only block numbers on a prisoner's call list when persons on the list specifically request a block; (3) restrain the DOCR from blocking parent-child telephone communications; and (4) "punish" the defendants for their alleged deprivation of his parental rights and refusal to abide by court-ordered visitation. With respect to Claims 5 & 6, Holbach asks that Falk be "punished" for his allegedly negligent and improper conduct. (Docket No. 7).

## II.  BACKGROUND

When Holbach arrived at the JRCC on March 11, 2008, the DOCR's telephone policy limited each prisoner's social calls to ten numbers that had to be listed on the prisoner's "call list." The ten-number limit did not include those for counsel or clergy, and prisoners were allowed to periodically change the numbers on their call lists. (Doc. No. 26-1, ¶¶ 5-6).

Each number on the call list had to be approved by prison officials. The approval process included a requirement that the owner of the listed number complete and return a telephone application. If a completed application was not received within thirty days, the policy provided that the number would be blocked. (Doc. No. 26-1, ¶¶ 5-8), Essentially, this gave the prisoner a thirty-day grace period - at least for the initially listed numbers, since the DOCR would immediately activate the numbers upon listing.[3]

---

[3] The DOCR's telephone policy was set out in the Inmate Handbook as follows:
  You can only make telephone calls to people that you have registered on your telephone call list. The phone list will be explained to you in Orientation. You are not allowed to make telephone calls for another inmate, or to use another inmate's pin number.
  Each inmate is allowed a maximum of ten active social telephone numbers on their calling list. Attorney and clergy (of record) telephone numbers are not limited or included on the list of ten

In this case, Holbach listed two numbers that he claims were associated with his ex-wife and that he used to telephone his minor son. The first number was 605-268-5597, which he claimed was his ex-wife's cell number. Later, he added number 605-742-0317, which he claimed was his ex-wife's land line. (Doc. No. 40, p. 28). It is undisputed that both numbers became active upon listing and remained active beyond any thirty-day grace period. It is also undisputed that the DOCR eventually blocked the two numbers, claiming that completed applications had not been received from the owner of the numbers, which presumably was Holbach's ex-wife.

Holbach claims the DOCR's explanation for why it blocked the two numbers amounts to "fraud upon the court." He claims that completed applications must have been returned by his ex-wife, given the DOCR's policy of blocking numbers if completed applications were received after thirty days and the fact the two numbers remained active beyond the thirty-day limit.

Holbach claims the real reason the numbers were blocked was retaliation for his having exposed what he claims was an earlier improper attempt to block one of the numbers. Holbach states that, in late 2008, defendant Falk spoke with a woman who requested that prison officials block calls to one of the two numbers in question - most probably the land line. Holbach claims that Falk honored the request and caused a block to be placed, erroneously believing the woman caller

---

social telephone calls. Inmates with more than ten active telephone numbers on their social telephone number list will be required to reduce the active calling list to ten only, upon request of adding a new social telephone number. Any new telephone number requests may only be approved after a completed telephone application is received from a family member of (sic) friend and the inmate has approved the telephone number, in writing, to the inmate phone service representative. Inmates will be allowed to change their personal telephone list or add new telephone numbers every 90 days from the date of the last request. Inmates must allow approximately 14 days for processing.
(Docket No. 26-2 at p. 3).

The thirty-day grace period, while not part of the Handbook policy, was referenced on the telephone application. (Docket No. 26-3). It is unclear whether the *de facto* grace period applied only to the calls listed on a prisoner's initial call list or whether it also applied to changed numbers, but this is not material here since Holbach received the benefit of a grace period, regardless of what might have been the policy.

to be Holbach's ex-wife. Holbach claims the caller was not his ex-wife, but rather was the mother of the ex-wife's current husband. Holbach states that, when he complained the block had erroneously been imposed and was preventing him from having contact with his minor son, the block was lifted but soon was reinstated.

Holbach has submitted phone logs that he claims prove defendants' "fraud upon the court." The logs appear to show: that calls to number 605-742-0317 were blocked in December 2008, after the number had been active for some time; that the block on that number was lifted later in December or at the beginning of January; and that the block was reinstated on January 5, 2009, at which time calls to number 605-268-5597 were also blocked after that number been active for almost seven months. (Docket No. 31-5).[4]

Defendants deny Holbach's claims of fraud and retaliation. They have submitted affidavit testimony affirming that completed applications had never been received for the two numbers. They state it was a combination of inattention and software glitches that resulted in the two numbers not being blocked when completed applications were not received within thirty days. They state it was when Holbach started making phone complaints that it was discovered that there were no completed applications on file and that it was at that time that blocks were finally imposed. (Doc. No. 34-1).

---

[4] The logs appear to show that the DOCR did not block Holbach's calls to 605-268-5597 (purportedly his ex-wife's cell number) until January 5, 2009, almost seven months after Holbach started making calls to that number. For calls to number 605-742-0317 (purportedly the ex-wife's land line), the logs indicate the following: The first calls to the number, which were in November 2008, were not blocked. Two calls were then blocked on December 5, 2008. However, the next calls to that number, which were not until January 4, 2009, were not blocked. But, beginning the next day (which is the same day that calls were first blocked to number 605-268-5597), calls were again blocked and have remained blocked since that date.

In his filings, Holbach creates the impression that he had been having meaningful telephone contact with his minor son until the DOCR blocked the numbers. While it does not make any difference in terms of the recommended disposition, this appears to be doubtful given the information in the phone logs submitted by Holbach. The logs appear to show that almost all of the *unblocked* calls to the two numbers in question were either not answered or were immediately terminated on the other end. The three or four instances of completed calls of any duration appear to have lasted no more than several minutes.

5

Defendants have not addressed Holbach's claim that one of his numbers for his ex-wife was blocked for a period of time because of a call received from a person who was not his ex-wife and that the block was lifted after he complained, only to be reinstated later.[5] However, even if you assume the truth of what Holbach claims with respect to these events, it is not material to any claim of a constitutional violation since, at most, it involved mere negligence. Further, the telephone logs proffered by Holbach most certainly do not demonstrate "fraud upon the court."

Holbach also complains about a block imposed on the number for his sister after it too had been active beyond the thirty-day grace period. Prison officials advised Holbach that the reason for the block was again the lack of a completed application. (Doc. No. 34-2). And, as with the phone numbers for Holbach's ex-wife, it appears the lack of a completed application was not discovered until Holbach started making his phone complaints, at which time the number was blocked. (Doc. No. 34-2).

## III. DISCUSSION

The principles governing the motion for summary judgment by defendants Bertsch, Redmann, and Falk are well known to the court and need not be repeated here. E.g., Iverson v. Bronco Drilling Co., Inc., __ F. Supp. 2d __, 2009 WL 3633826, *3 (D.N.D. Nov. 4, 2009); see generally Uhiren v. Bristol-Meyers Squibb Co., Inc., 346 F.3d 824, 827 (8th Cir. 2003). Since defendant Harris' motion to dismiss also appears to rely upon matters outside the complaint, it also will be treated as a motion for summary judgment.

---

[5] The Supreme Court has emphasized that the administrative record created by prison authorities is often helpful in subsequently filed PLRA cases. E.g., Jones v. Bock, 549 U.S. 199, 204 (2007); Woodford v. Ngo, 548 U.S. 81, 94-95 (2006). In this case, the information that would have provided more complete context for Holbach's claims was likely contained in the prison's administrative record. Here, defendants have submitted a few bits and pieces of that record, and Holbach has filed additional bits and pieces. In the future, if a part of the prison's administrative record is going to be relied upon, the court prefers the complete record related to the claims at issue be filed.

**A.     The alleged unconstitutionality of the DOCR's phone policy (Claim No. 1)**

Holbach claims the DOCR's policy of blocking numbers on prisoners' call lists if completed applications are not returned by the owners of the numbers (herein the "completed application requirement") is unduly burdensome and violates his First Amendment and "parental rights."[6] He argues that calls should be allowed to go through unless the owners of the phones specifically request a block.

In the Eighth Circuit, claims involving prisoner telephone access must be measured against the four-factor standard set forth in Turner v. Safley, 482 U.S. 78 (1987) ("Turner"). Benzel v. Grammar, 869 F.2d 1105, 1108 (8th Cir. 1989). In Benzel, the Eighth Circuit had this to say about the balancing that must be performed under the Turner standard in terms of weighing the rights of inmates against the needs of prison officials engaged in the very difficult task of operating a prison:

> Convicted criminals do not forfeit all constitutional protections when they don prison garb. A lawfully incarcerated inmate, however, may not exercise certain constitutional rights as freely as he might have outside prison walls. "In sum, there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." Wolff v. McDonnell, 418 U.S. 539, 556, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974) (quoted in Hill v. Blackwell, 774 F.2d 338, 340 (8th Cir.1985)). As the Supreme Court has recognized, "limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives-including deterrence of crime,

---

[6] It is assumed for the purposes of the recommendation being made that Holbach does have constitutional interests at stake that must be balanced against the institutional needs of the DOCR under the Turner test and that Holbach's reference to "parental rights" is intended to invoke his liberty interests under the Fourteenth Amendment. Benzel v. Grammar, 869 F.2d 1105, 1108 (8th Cir. 1989); see Arsberry v. Illinois, 244 F.3d 558, 564-567 (7th Cir. 2001) (expressing doubt as to whether prisoners have First Amendment rights in making phone calls, but observing that some calls to family are an "electronic visit," for which prisoner may have a liberty interest under the Fourteenth Amendment); cf. Overton v. Bazzetta, 539 U.S. 126, 131 (2003) (stating in a prison visitation case that "the Constitution protects 'certain kinds of highly personal relationships'" without being more specific as to the source of the rights in case in which claims were made under the First Amendment and the liberty interest of the Fourteenth Amendment, quoting Roberts v. United States Jaycees, 468 U.S. 609, 618 (1984), and citing other cases); Procunier v. Pell, 417 U.S. 817, 823-828 & n. 4-5 (1973) (observing that prison visitation, including visitation with family and friends, can be an alternative conduit for the dissemination of prisoner grievances protected under the First Amendment).

7

> rehabilitation of prisoners, and institutional security." O'Lone v. Estate of Shabazz, 482 U.S. 342, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987); Pell v. Procunier, 417 U.S. 817, 822-23, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974). While this court's review of a determination concerning the reasonableness of a prison regulation that impinges on a constitutional right is plenary, Hill, 774 F.2d at 343, we are keenly aware that federal courts owe great deference to the expertise of the officials who perform the "always difficult and often thankless task of running a prison." Salaam v. Lockhart, 856 F.2d 1120, 1122 (8th Cir.1988); Bell v. Wolfish, 441 U.S. 520, 562, 99 S.Ct. 1861, 1886, 60 L.Ed.2d 447 (1979).
>
> We judge prison regulations alleged to infringe on inmates' constitutional rights under a reasonableness test less restrictive than the test ordinarily applied to alleged constitutional infringements. The Supreme Court recently articulated the proper standard for balancing prisoners' rights with prison rules: "[w]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987). In applying this standard, the Court considered four criteria: (1) whether there is a valid, rational connection between the regulation and legitimate governmental interests put forward to justify it; (2) whether alternative means of exercising their rights remain open to the prisoners; (3) whether accommodation of the asserted rights will trigger a "ripple effect" on fellow inmates and prison officials; and (4) whether a ready alternative to the regulation would fully accommodate the prisoners' rights at de minimis cost to the valid penological interest. Id. 107 S.Ct. at 2262; see Salaam, 856 F.2d at 1122.
>
> Although in some instances prison inmates may have a right to use the telephone for communication with relatives and friends, prison officials may restrict that right in a reasonable manner, "subject to rational limitations in the face of legitimate security interest of the penal institution." Hutchings v. Corum, 501 F.Supp. 1276, 1296 (W.D.Mo.1980). A prisoner has no right to unlimited telephone use. See Lopez v. Reyes, 692 F.2d 15, 17 (5th Cir.1982).

869 F.2d at 1108.

In this case, the DOCR states that the "completed application requirement" serves several useful purposes, including the following:

- It assists in the verification of the identity of the owners of the numbers on the prisoner's call list, which is important in preventing calls to unauthorized persons, such as crime victims and judges. Also, knowing who prisoners are calling is helpful in locating prisoners when there has been a walkaway or an escape.

8

- It provides affirmative assurance that the owners of the numbers are willing to accept calls from the prisoners and that there are no outstanding restraining orders unknown to prison officials.

- Inconsistent information in the applications will sometimes alert prison officials to security issues.

(Doc. No. 26-1, ¶¶ 10-13). The DOCR states it has tried other methods of verifying and approving social call numbers, but this has worked the best. (Doc. No. 26-1, ¶ 9).

Applying the Turner test, the "completed application requirement" easily satisfies the first Turner factor. Protecting the public against unwanted and harassing calls by prisoners is clearly a legitimate penological objective. The same is also true for the security purposes advanced by the DOCR. See, e.g., Israel v. Cohn, 6 Fed. Appx. 348, 350 (7th Cir. 2001); Pope v. Hightower, 101 F.3d 1382, 1385 (11th Cir. 1996); Iron Eyes v. Henry, 907 F.2d 810, 814 (8th Cir. 1990); Arney v. Simmons, 26 F. Supp. 2d 1288, 1294-95 (D. Kan. 1998). And, here, the rational connection between these objectives and the "completed application requirement" is obvious and does not require further proof. See Israel v. Cohn, supra.

As for the second factor, the telephone application can be sent to the owner of the number, the application is short and easy to complete, and thirty days is more than enough time to complete and return the application. Consequently, the burden imposed on the prisoners is minimal. Holbach argues the requirement has prevented him from being able to visit with his minor son. However, the real impediment there is not the "completed application requirement," but rather an uncooperative ex-spouse. Also, Holbach has other ways of communicating with his family and friends, including mail and personal visitation. See Israel v. Cohn, supra.

The third Turner factor having to do with "ripple effects on fellow inmates and prison officials" also favors prison officials.[7] While the statement that doing away with the telephone applications would have "far-reaching security implications" is somewhat conclusory, the security purposes advanced by the "completed application process" are legitimate and maintaining security obviously impacts other prisoners and staff.

Finally, with respect to the fourth Turner factor, Holbach has failed to demonstrated that his alternative, which is only blocking numbers when the owners specially request a block, fully accomplishes the objectives of the "completed application requirement," much less at a *de minimis* cost to those objectives.[8] Cf. Ortiz v. Fort Dodge Correctional Facility, 368 F.3d 1024, 1027 (8th Cir. 2004).

Neither Turner, nor the cases applying the Turner test, specify the relative weight that must accorded the four factors, or even whether all must be found in favor of prison officials in order for the challenged regulation or policy to pass constitutional muster. Scott v. Mississippi Dept. of Corrections, 961 F.2d 77, 79 (5th Cir. 1992); see Mays v. Springborn, 575 F.3d 643, 647-648 (7th Cir. 2009); see generally M. Mushlin, 1 Rights of Prisoners § 2.9 (3d ed.). The only requirement, to the extent there is one, is that the four factors be considered as part of the overall weighing of the relevant interests. Mays v. Springborn, supra; Jacklovich v. Simmons, 392 F.3d 420, 426-427 (10th

---

[7] Defendants also argue the burdens of having to expand the call list, but the ten number limit is not at issue in this case.

[8] Holbach has a submitted new version of the DOCR's telephone application which he claims demonstrates that the DOCR changed its policies since he instituted this action and that constitutes an admission of the validity of his claims. It is obvious from the face of the documents, however, that the purported changes do not fundamentally alter the "completed application requirement." The purported changes are largely cosmetic, except for the deletion of the requirement for providing a social security number, which may have been done to comply with legal requirements not at issue here. (Doc. Nos. 35-1 & 35-2).

Cir. 2004); see Murphy v. Missouri Dept. of Corrections, 372 F.3d 979, 986 (8th Cir. 2004); but see Morrison v. Hall, 261 F.3d 896, 907 (9th Cir. 2001); Scott v. Mississippi Dept. of Corrections, supra. Here, the "completed application requirement" easily satisfies the Turner test; its use is not a *per se* violation of Holbach's constitutional rights.

Holbach also argues that blocking numbers without the express approval of the owners violates their constitutional rights. However, it is doubtful that Holbach has standing to make this argument. See Wallace v. Grey, 2009 WL 249461, *8 (D. Utah 2009); Cartano v. Santa Clara County, 2002 WL 1677723, *2 (N.D. Cal. 2002) (prisoner proceeding *pro se* was not the appropriate person to represent a minor child when he was not the parent or guardian with physical custody); cf. Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 623 n.3 (1989). But, even if he does, the argument lacks merit for the same reasons. Thornburgh v. Abbott, 490 U.S. 401, 410 n.9 (1989); Rice v. Kempker, 374 F.3d 675, 681 (8th Cir. 2004) (citing Thornburgh for the proposition that the Turner test also applies to constitutional challenges by non-prisoners to prison regulations).

### B. The blocking of the telephone numbers for Holbach's ex-wife and his sister violated his constitutional rights (Claim No. 2)

Separate from his challenge to the "completed application requirement," Holbach argues that completed applications must have been received from his ex-wife and his sister because their numbers remained active beyond the thirty-day grace period. He argues that the blocking of the numbers after completed applications had been received violated his First Amendment and parental rights.

One of the problems with this argument, at least for the numbers associated with his ex-wife, is that Holbach has failed to proffer sufficient evidence that completed applications were ever received. While in some cases the presumption that officials will follow their own policies might

11

be sufficient to create a fact issue, it is not enough here. Defendants have presented affidavit testimony denying that completed applications were ever received. And, more importantly, Holbach has himself proffered evidence that renders implausible the possibility that Holbach's ex-wife ever returned completed applications. The phone logs submitted by Holbach show repeated failures to answer and immediate hangups for calls directed to the numbers associated with his ex-wife from when the numbers first became active. Obviously, this is inconsistent with Holbach's ex-wife having acknowledged a willingness to receive calls by returning completed applications. Further, the possibility that the ex-wife submitted completed applications runs counter to Holbach's other claims, including the alleged failure on the part of prison officials to comply with his state-court visitation order and Falk's alleged destruction of "evidence" that Holbach claims was needed for his state-court domestic relations proceeding.

The situation with respect to Holbach's sister may not be as clear. However, even assuming that DOCR officials lost a completed application for the sister, Holbach has failed to offer submissible evidence that this would have been anything more than negligence, which, as discussed next, is not enough to make out a prima facie case for a violation of constitutional rights actionable under § 1983.

### C.     Holbach's state law claims (Claims Nos. 3-7)

Claims 3 & 5 allege negligence on the part of prison officials. Proof of negligence alone, however, is not enough to make out a claim of a violation of constitutional rights actionable under § 1983. Jones v. Minnesota Dept. of Corrections, 512 F.3d 478, 481-482 (8th Cir. 2008); Hartsfield v. Colburn, 491 F.3d 394, 396-97 (8th Cir. 2007); Walker v. Reed, 104 F.3d 156, 157-158 (8th Cir. 1997) (citing Daniels v. Williams, 474 U.S. 327, 328 (1986)). The same is also true with respect

to Holbach's claims of violation of state law, state-court orders, and prison policies in Claims 4, 6, & 7.[9] Doe v. Gooden, 214 F.3d 952, 955 (8th Cir. 2000); Ebmeier v Stump, 70 F.3d 1012, 1013 (8th Cir. 1995) (violations of state law and state court orders, standing alone, do not provide a cause of action under § 1983). In particular, defendants have no affirmative duty to ensure that Holbach has visitation with his son in accordance the state-court's visitation order, which, in this case, was not even directed to the defendants.[10] (Doc. No. 26-11).

Given the lack of a viable federal claim, the court need not consider whether Claims 3-7 survive the pending motions for dismissal and summary judgment. This is because there are no special factors that would justify the court exercising supplemental jurisdiction over these claims in the absence of a viable federal claim. See Johnson v. City of Shorewood, 360 F.3d 810, 819 (8th Cir. 2004); Gregoire v. Class, 236 F.3d 413, 419 (8th Cir. 2000); ACLU v. City of Florissant, 186 F.3d 1095, 1098-99 (8th Cir. 1999).

## IV. RECOMMENDATION

Based on the foregoing, the following is **RECOMMENDED**

1. Defendants' motion for summary judgement (Docket No. 25) and motion to dismiss (Doc. No. 29) be **GRANTED IN PART** and Claims 1 & 2 be **DISMISSED WITH PREJUDICE**.

---

[9] In Claim 7, Holbach alleges that Falk gave confidential information to Carol Healy, the person who Falk mistakenly believed to be Holbach's ex-wife. Holbach claims this disclosure violated "confidentiality laws," but fails to point to any applicable federal law or regulation, much less set forth what information he claims was shared and why that information would be confidential.

[10] It appears from the portions of the prison's administrative record which have been submitted that prison officials did make a social worker available to assist Holbach in working through proper channels to establish telephone contact with his son, but, apparently, these efforts were not enough to satisfy Holbach. (Doc. Nos. 26-5 to 26-12).

2.	The court decline to exercise supplemental jurisdiction over Claims 3-7 and that these claims be **DISMISSED WITHOUT PREJUDICE**.

### NOTICE OF RIGHT TO FILE OBJECTIONS

Pursuant to Local Rule 72.1(3)(4), any party may object to this recommendation within fourteen (14) days after being served with a copy of this Report and Recommendation.  Failure to file appropriate objections may result in the recommended action being taken.

Dated this 4th day of December, 2009.

*/s/  Charles S.  Miller, Jr.*
Charles S.  Miller, Jr.
United States Magistrate Judge
